The next case on the calendar is United States of America v. Baker, 25-1050. And good afternoon, everyone. My name is Jesse. Hold on. There's going to be a lot of background noise until the opposing counsel gets seated and we're ready to go. So just give us one minute, please. Okay. I think we're all ready. Good afternoon. My name is Jesse Cantor, and I represent Mr. Baker. And I want to take things a little out of order for this hearing and start with the confrontation violation first, before I get into the 413 issue. However you want to do it's just fine. Okay. So starting with the confrontation violation, to avoid a confrontation violation, the witness first needs to have personal knowledge, what he is about to testify, and this is going to be Detective Spence. And absent that, then there needs to be a sufficient foundation to establish an independent recollection based on refreshing memory. And that's the part that we have a problem with in this particular case. That's what our record lacks.  Because in this particular case, Detective Spence first of all testified that he didn't really have any recollection of this event prior to. Well, that's not really what he said. He said he was present. He said he was present. He remembered the event, I think, quite generally. And then he needed to refresh his recollection from the report, which he did not author, right? Right. But prior to being in contact, he testified that this case wasn't even on his mind. Well, but he testified to several things. He said initially, you know, I don't remember this. I remember generally. I remember some stuff about it, but not specifics. And then he said after reading this report, it refreshes my recollection. And the trial judge said, okay, I believe you. You can cross-examine him and attack his credibility. But I think he's now testifying from his recollection as refreshed by the report. So I'm not sure. Is your contention that the trial judge clearly erred in making that determination? Or is there a legal argument that's separate from that? Well, the record does not have Detective Spence testify that his recollection was refreshed. What he says is that after seeing the report, he says, quote, part of it after reviewing the report were familiar to me. And then counsel on the direct examination states, well, let's walk through that report. But there was never an instance, as far as I can tell from the record, where Detective Spence testified, okay, now after reviewing this report, my recollection has been refreshed. Does he have to remember everything that occurred at the time? Does everything in the report have to be familiar to him? Or is it enough that reading the report refreshes his recollection? What has to be established for sufficient foundation for 612 is that what he's about to testify to has to be based on an independent recollection as opposed to him testifying to the contents of the report, which is what we are arguing he did, versus testifying based on an independent recollection. Let me separate your argument here because this is why I asked the question. You started with a confrontation clause argument.  Now you're making a 612 argument. By the way, I'm not sure it's 612. I think you're really talking about 602 because 612 talks about your rights to use the document once it refreshes somebody's recollection. But put that aside. I'm focusing now on the confrontation clause argument. Okay. If he's giving his own testimony based on what he now remembers having looked at the document, why is that a confrontation clause problem? Because if there is an insufficient record to establish independent recollection, then we are now diving into what Smith v. Arizona holds, which is if you don't have that independent recollection and you testify to the contents of a report, that's the confrontation violation. Right. So I'm trying to focus now on, and I'm familiar with the Arizona case, I'm trying to focus now on how much you must remember to refresh your recollection to avoid a confrontation clause violation. Not a Rule 602 violation, but a confrontation clause violation. The standard, as I read it, is you have to have an independent recollection. Well, he remembered being there. He said, I don't remember verbatim. The jury got to hear because your client was exercising his right to cross-examination that he didn't remember verbatim, that he hadn't authored the report. How was your client denied his right to confrontation? Because Detective Spence testified based on, without first establishing what parts were familiar to him. So I guess we're both sort of continuing to speak in generalizations. What's your base case law for the proposition that this wasn't enough? We've never said in order to refresh your recollection, you have to be able to say, ah, it all comes back to me now like it was yesterday. So how much is enough? What would be enough would be if there was confirmation from the witness to testify that, yes, that interview and what Mr. Baker said. What's your best case law? What's your best case law that draws that line for us? Well, it comes back to Smith v. Arizona. All right. Right. I mean, with these evidentiary issues, it's really hard to find a case exactly on point. Really the question here, the error here that we are arguing is that Detective Spence did not have that sufficient independent recollection. Right. Okay. Based on what he testified to, which is I just remember gists of what was or I just remember parts of it were familiar, but then there was never any follow-up. Okay. Well, let's now dive into the parts that were familiar. So that takes me back to how your client's right to confront was denied. But I'm not sure if there's more that you have to say about this, given that you've pointed out the case law that you want to rely upon. Yes. Are there other parts of your argument you'd like to? Yes. So then that dives into or moves into the 413 error. And the trial judge allowed S.C., who was the witness to establish the 413 evidence from 2004, allowed her to testify based on the judge making a finding that her testimony was relevant due to propensity. That was the relevancy ruling. And the error that we are arguing is that a one-time single event from 2004, 20 years prior, is inadequate and insufficient to establish propensity. Well, it's remarkably similar modus operandi. And maybe we could start with the standard of review here. So the standard of review for that gives us an evidentiary issue with respect to admissibility. That's abuse of discretion. Right. How did the Court abuse its discretion here? Because when we look at the proximity, what the judge ruled with respect to proximity Are we talking about proximity in time or proximity of the humans involved? Are you talking about the Proximity in time, like when this 413 evidence occurred. I mean, the Court had to go through the LeMay factors that we outlined. And I just wrote this down. This is my paraphrase of what the judge ruled. But he stated that the age of the prior act weighs in favor of admissibility and neutral on the issue of admissibility. And that, Your Honor, would stretch the meaning of proximity. I think there's room to disagree on those factors. But how is there room to disagree about abuse of discretion? Well, okay. Maybe I can address that by way of an analogy. All right. Okay. Here's an analogy. If you commit a traffic violation, you get one speeding ticket in your life from 20 years ago, one speeding ticket. Does that now mean you have, 20 years later, a propensity to speed or a propensity to commit traffic violations? But aren't we dealing with a different weighting under Rule 413? 413, our case law says, evidence of a sexual assault can be admitted in order to show a propensity. What you seem to be saying is that, in this case, it was so distant in time that, under maybe Rule 403, it should have been excluded. But I don't understand the Rule 413 argument. The Rule 413 argument makes this kind of conviction admissible to show propensity. What you seem to be saying is, well, but its prejudicial value outweighs its probative value because it was so long ago. I understand that argument. But I don't understand the argument that the judge erred in finding that the prior conviction could be used to show propensity. So then we, to address that question, Your Honor, is we have to then understand what propensity means. And propensity is a pattern. It's a pattern of conduct. It's a natural tendency. But Congress knew that. And Congress adopted this rule in 413, and it doesn't have a time limit on it. There's no time limit, but at least there has to be some kind of pattern. And our argument is that. But where does it say it has to be a pattern? Well, that's the definition of propensity, is that there has to be some natural tendency. Would your argument be different if there were the same time period had elapsed, but there were three incidents that occurred 25 years ago? Yes. So then your argument isn't based on the temporal distance. It is that there aren't more events that are meeting the definition of  Well, temporal is one part. But then again, if we look at, like, all the factors that are used to determine whether or not this was prejudicial, for example. A pattern, which is part of the LeMay factor. So if there were more than one event, certainly I'd have a different argument. But that's a Rule 403 argument, I think. That is, yes. And it may be well taken. I'm just trying to get you to focus on why you think the prejudicial impact of this testimony outweighs any probative value. I'm having a harder time understanding your argument that a single incident can't be used to show propensity because that's precisely what the Rule says. Okay. Well, I think your first part of the question was, how does the prejudicial impact outweigh the probative value? That's right. Tell me why that is. This type of testimony is unduly prejudicial because we're talking about testimony of a sexual assault against a minor from 20 years ago. And inherently, that has to be prejudicial. Because this is a sexual contact case. It's unfairly prejudicial. It's unfairly prejudicial because of how long ago it was. Again, this was something that happened before. Let me change the facts. I'm sorry. It's the remote. So finish saying what you're saying, and I'll. I'm sorry. I missed that last part. I'm sorry, Your Honor. I'm sorry to speak over you. It's the difficulty of doing this remotely. But let me ask. Let's assume that the incident had been precisely the same 20 years ago, on an airplane, everything exactly the same. Would you still argue that its age made it inadmissible? Looking at the LeMay factors, I would argue that the only factor that applies would be similarity. But you still have to consider the other four factors. Pattern, intervening events. You have to consider necessity. And there was a. I think your answer to my question is yes. Yes, I wouldn't make that argument. I wouldn't make that argument. And temporal proximity. If there was some event that was similar, closer in time, or if, say, Mr. Baker 20 years ago was sent to prison for that first event and then was in prison for, you know, a decade or so, then it would be an easier argument to make that it was more probative than prejudicial. What about the fact that the conduct isn't disputed? It's not denied. He didn't deny that he acted this way on this occasion. He just disputes whether it was consensual. I disagree with that. Because, again, that testimony came from a witness who we are, again, arguing had inadequate recollection. I'm talking about the victim in this case. He doesn't deny acting the way she accused him of acting on the plane, does he? Oh, I thought you meant the 413 witness. Well, your concern is about propensity. What I'm trying to point out is the conduct in this case isn't even disputed. The conduct is not. The only issue for the jury on this case was consent. Right. Yes. Yes. So I see I've got two minutes. I would prefer to keep that for rebuttal, Your Honor. Certainly. Thank you. Good afternoon, Your Honors, and may it please the Court. Carolyn Forstein for the United States. Unless the Court would prefer otherwise, I'll take the issues in the same order that the appellant did. Well, can I just focus you on my issue for this particular case? 20 years is a long time, counsel. Do you want to talk about that? Yes, Your Honor. Agreed that 20 years is a long time, but I think it's squarely in line with the amount of time that other cases have said is permissible. And I think to take the point that the Court, I think, articulated before, it really is a totality of the circumstances analysis that the Court's described in Glanzer and LeMay. So I think while we can talk about each individual factor, it's the district court's analysis of all the factors together. And I would again point that especially on an abusive discretion standard, I think we can clearly see that the district court considered each of those factors and balanced them against each other. And to Your Honor's specific question about the 20 years, I would point this court to Medicine Horse, where there was, you know, an assault, two assaults from 45 and 50 years prior, and the court there still said that that was permissible. How important was this evidence of this prior assault to the government's case here? I think it was certainly helpful, which is the standard under LeMay for necessity in the context of a Rule 413 and Rule 403 balancing test. Here, as Your Honor pointed out, the issue was consent, and there was no witness that could corroborate whether or not the victim had or hadn't consented to the conduct. It was entirely dependent on her testimony. And so with respect to that, having the 413 victim testify about what had happened to her was meaningful corroboration for the victim in that particular case. Yes, but if you hadn't had it, you'd still have the same he said, she said about the two individuals on this airplane. I would agree. Jerry heard that. They heard both accounts. Yes, Your Honor, I agree. Do you at least think that the judge may have overstated the difficulty with the lack of contemporaneousness here? I mean, it may well be that balancing all the factors, the judge didn't abuse his discretion, and it may well be that there are cases that find incidents this old to be admissible. But I'm having a hard time thinking that the time period cuts in favor of admissibility. I appreciate that, Your Honor. If I recall correctly, the district court said that it either cuts in favor of the government or is neutral. And perhaps neutrality would have been a better way to come out on that factor, but I don't think that it was an abuse of discretion by any means. Well, I have to back up and reread the sentence. I can't think how it cuts in favor of the government. What am I missing there? Your Honor, I think it's that 20 years in the scope of things is perhaps not as long as it could be. Well, does he mean that, and this is entirely possible, he's more familiar with the case law because there were examples that I read about in this particular briefing that I had not seen before that are significantly longer periods of time. Maybe he was just familiar with that and I was not. But otherwise, I don't know how it would cut in favor of the government. I think, Your Honor, based on the record, I would say the same. I think the court did cite U.S. v. Abrams in its ruling on this issue, and that was also a 20-year gap. Had the government made that argument to the district court prior to the ruling that there were other cases that were with longer delays? Your Honor, I would have to go back and check the briefing, but I know that that issue was briefed. Okay, thank you for that. I think I interrupted you, Judge Hurwitz. No, I got an answer to my question. Oh, okay. Anything further? Your Honor, if there's nothing further on the Rule 413 question, I'll turn to the second issue, which was about the testimony from Detective Spence. Right. And so that's the detective who interviewed Mr. Baker back in 2005 after that prior sexual assault was reported. So I think to start with, as I believe Your Honor has discussed with my friend in argument, this really wasn't a confrontation clause violation. The witness came and testified about an event that he was personally at. So I would take issue with the sort of the initial framing of the facts as this being him reading a report into the record. I would note even that in the direct examination, the government didn't introduce the report. The government didn't say, let's walk through the report. The government said, let's walk through the interview. And this was the interview that he conducted with Mr. Baker. Can I ask you a factual question about trial? Baker says parts of the interview are familiar to me. Do we know whether he testified about parts that weren't familiar to him or whether he just refreshed his recollection from the parts that were familiar to him? Can we tell that from this record? Your Honor, I don't think we can tell that from this record beyond the fact that he was testifying under oath to his recollection. Well, I'm not sure that helps me. In other words, I'm trying to figure out. Let's assume the writing refreshes my recollection about some things but not others. And I testify about the things that I was refreshed on, but then I also testify about things I don't remember at all just because I'm reading the paper. I'm trying to figure out whether or not I can tell from this record whether that happened here or whether or not all we know is that he says his recollection was refreshed because some parts were familiar and then testified about what was refreshed. Yes. I guess I would have two points in response, if I may, and one might be a clarifying question. So I agree on the record. I don't think it was parsed at that level. So there's nothing in the record where they said, were you specifically refreshed on this fact? Do you specifically recall this fact? I do with respect to your reference to the report and just sort of reading the rest of it. I think that's the piece that my understanding is that did not happen at  So he read the report in witness preparation, but the report was only used on cross-examination at trial. So I do think that that is a meaningful just sort of factual baseline for this is that this was not an instance where a witness came up to the stand, was given a report that someone else read, and the witness simply read it to the jury. I'm sorry, Judge Kristen. One other question on this point. If it did occur all as a result of cross-examination, in other words, you didn't put him on the stand and then ask him to testify about what happened at the time, correct? Yes, Your Honor. Do we have something like a waiver of a confrontation cause problem? I think I'm lost in the question or the answer. Do you mean, yes, we didn't put him on the stand and ask him to testify, but what happened? I thought that you did put him on the stand and ask him to testify, but what happened in the interview? I think I might've misunderstood the first part of Judge Hurwitz's question. Could you take another run at that question, Judge Hurwitz? You said this only came up in cross-examination, but in direct, I take it he testified about what happened in the interview based on his recollection being refreshed, correct? You did not use the term refreshed. I understand. The judge admitted it under that evidence rule. So I'm trying to figure out how this happened. And I thought it was on his direct, but then you said it was on cross. So, and again, if I'm misunderstanding the question, please just let me know. So what happened below was that first there, before the jury was there, there was a voir dire. The defense was permitted to voir dire Detective Spence. The court concluded that it was permissible for him to testify. The government then put him on direct, said, you know, walked him through. Did you conduct an interview with Mr. Baker? He said, yes. They said, let's walk through that interview. He testified without paper in front of him to his own recollection of what had happened. And then on cross, the defense got up, cross-examined him and used the report to actually impeach him on a particular point that he had misremembered. Okay. Thank you. That's, that's helpful. So, so now my question is, was there a point on cross-examination where he said, you know, now that you've asked me that question, I don't have any independent recollection of that occurring. I, I would have to go back and check the record. I don't know if I remember him saying, I specifically don't remember that that occurred. But he did, you know, he went back and looked and correct himself and said it had to do, I think, with the point in time at which the victim, which Mr. Baker recalled that the victim had said no in that prior assault. And he noted that he had spoken incorrectly on direct, which I would submit is exactly what the confrontation clause requires. That's, that's precisely what I think, you know, the confrontation clause envisions to happen on cross-examination is to be able to undercut a witness's credibility. And that's what happened here. Is it your recollection there was just the one instance of the witness saying, oops, I got that wrong. I recall there being one instance in which the report was specifically used to point out something that he got wrong. I would have to go back and check the transcript. Okay. Judge Hurwitz, you weren't done, I think. No, I was, but I, I had a broader question. And it's the same question Judge Christin asked you about the, the prior victim where I think your argument about why you needed to use it or found it useful was a little different here. What do you need a guy who, whose recollection has to be refreshed about an interview that occurred 20 years ago in to, in your case, if the, if the jury doesn't believe the victim, I just have a difficult time. And look, this, this may be admissible. That's what we're going to rule on. But I, it's another one of those ones where it seems to me the government in some ways created the problem by doing a belt and suspenders approach. I think my answer to that would be twofold. So the first is that I do think there were additional things that came in through Detective Spence. So the interview he was testifying about wasn't the interview or wasn't just the interview of the victim. It was the interview that he did with Mr. Baker. And in that interview, Mr. Baker did admit to some of the conduct, including, you know, I think he, he couched it in qualifying terms, but said something like I may have shoved her head down towards my genitals. So I think that again confirmed his conduct and the lack of consent, which isn't something that anyone besides the victim, in this case, the 413 victim could testify to. I think he repeatedly said that every time she said stop, I stopped, meaning she had to repeatedly say stop. She did, Your Honor. And so I do think that's additive, but I would also note that, you know, in any event, I think, Your Honor, his concern speaks to the fact that this would be harmless. The Detective Spence's testimony, even if this court concludes that maybe he shouldn't have been permitted to testify that there was, you know, this was additional on top of the 413 evidence. So we would submit harmless error on that point as well. If the court has any questions about the final two submissions, I'm happy to take those now, both the lesser included offense instruction and then also sentencing and can also just run through the government's argument briefly on those. I don't think we do. Is that right, Judge Hurwitz? No questions on those last two points? I don't. Okay. It looks like we do not. Okay. Thank you, Your Honor. Thank you. With my last two minutes, I do want to say just when we're talking about harmless error with respect to the 413, that testimony bolsters, was used to bolster SC, the prior victim's testimony, which was then used to bolster EC's testimony. So when we're talking about sexual assaults against a minor, that's not harmless. But I do want to spend my last minute going over some of the cases that the government is relying on with respect to this 20-year period. And the cases, Judge Hurwitz wanted to know about some cases, particularly Medicine Horse. We heard Abrams and so on. Those are distinguishable cases. Medicine Horse, let's start with Medicine Horse. While there was testimony about prior events going back 45 to 50 years, there were multiple acts, multiple victims, all involving a pattern involving family members that were also recent. So it was a span of events, a pattern of events, which is different from what we have here. Same thing with Abrams. It goes back starting 20 years, but as recent as five years. Again, we have a pattern of acts from 20 years on the high end to five years on the low end. Stern is the only case, and these are all unpublished, by the way. Stern is the only case that involved one incident from 20 years ago, one act, similar to what we have. The difference, however, is that Stern had an intervening circumstance where the defendant was incarcerated for much of that 20-year period, unlike what we have here in Baker. And then the only other cases that were published that were cited by the government would be the Meacham and the Larson case. However, setting aside that they're from different circuits, the Second Circuit and the Tenth Circuit, setting that aside, again, it involved multiple victims and multiple acts. So when you have a pattern of conduct that spans a decade or two, that is distinguishable from a one-time single event that we're talking about here, Mr. Baker. I think I'm done. Thank you. Thank you both for your advocacy.
judges: CHRISTEN, HURWITZ, DESAI